Good morning. We have three cases to be argued this morning. First case is Appeal Number 2011-1435, In Re Halsey. Mr. Behramoglu, did I come even close to the correct pronunciation? Yes, Your Honor. Very well, yes. Very good. Good morning, Your Honors, and may it please the Court. There are three points that I need to convince you of today to win this case. First, person with ordinary skill in the art has no motivation to combine Olson reference with the admitted prior art, as PTO claimed. Second, PTO committed a reversible error when they constructed the Claim 54 in applicants' application. And third, Olson either by itself or combined with admitted prior art do not teach every step of the Claim 54. But Olson does show the same coding, does it not? Your Honor, what Olson discloses is a surface that is covered with homogeneous material, that is, the whole surface covered. And then they have a coating on top of it, and they try to reduce reflection from the surface. So by reducing reflection, they reduce the glare. But it's the same coating that's claimed, is it not? It's not. The coating, our range falls within the Olson range, that is correct, thickness-wise. And it's silicon dioxide, right? It's silicon dioxide. What we claim is metal oxide, and in one of the preferred embodiments that we use silicon dioxide. Olson uses silicon dioxide as well. And the silicon dioxide in Olson has a refractive index at the sodium D line, correct? Well, refractive index in sodium D line means, Your Honor, that you make the measurement at sodium D line. So the refractive index from material to material may change. Yes, if you take a silicon dioxide, use it in Olson, use it in our invention, it will have the same refractive index. But the big difference between what Olson is doing and what the invention here, inventor did, is inventor reduces the contrast, not so much the glare. Because when there's a surface... But let me just ask, is that the nub of your argument, that you're not disputing there's a substantial similarity between the materials and so forth? You're just saying that there's such a difference between the contrast and the glare that it was not obvious. Well, no, Your Honor. What I'm saying is that the material could be falling in the range of material disclosed by Olson. However, a person having ordinary skill in the art would not be motivated to take Olson's material and apply it to a patterned surface. And the reason for that is because a person with ordinary skill in the art trying to solve contrast problems would not be motivated by Olson. Olson has nothing to do with contrast. It doesn't talk about contrast. It doesn't say anything about contrast. So why would someone with ordinary skill look at a reference that doesn't even talk about contrast? But wasn't the inventor here also concerned with glare? It is true, Your Honor. In the specification, inventor talked about reducing glare and also increasing transmission. However, as Graham Law says, we have to look at the application as a whole, not just one section. That's what PTO did. They even brought this up during the oral argument at the board level that this application, our application, talks about increased light transmission. It is true. However, it's a balancing, balancing of reducing contrast and increasing light transmission. Light transmission is important. When you turn the unit on, the amount of light goes through. This invention, solving contrast, what it is about is that when the power to the unit is off, when you look at it, can you see the patterns on the screen or not? That is the big difference. So another way, you go to a store, you look at this when the power is off, you can see all these ITO lines on the screen. If the coating shown in Olsen were applied to a substrate with these patterns of differing materials, the reduction in the contrast difference would take place, would it not? Not necessarily, Your Honor. Not necessarily? Really? It's the same materials. Your Honor, our invention is a method and we tell the person ordering a skill in the yard how to take a material and put it on a surface. In our claim, we specifically state that you need to pick the refractive index carefully along with the thickness because those two parameters make the big difference. If you take the Olsen material and blindly apply to a pattern surface, then the result will be that the contrast will be very bad. So that's the inventive concept of your patent, the actual choice of the surface? That is correct, Your Honor. Our invention is a method and a step that we're telling public and person with ordinary skill, when you are applying this metal oxide or the material, even if it's disclosed in Olsen, be careful with the refractive index and the thickness and make sure that you adjust properly. How is that a sufficient disclosure? If that's the inventiveness of this claim, you don't outline what that thickness is. If you claim, be careful when you pick how thick it is, that's not sufficient, right? Actually, Your Honor, we disclose that in specification. We specifically... The claim just says, and a thickness that in combination reduces... Yes, Your Honor. We don't have the limitations in claim. We do have the teaching in the application itself. In the disclosure, we disclose anywhere from 600 to 1400 Armstrong thickness, and we disclose preferred thicknesses, and I can tell you... So you think you've disavowed everything other than the particular numbers you've disclosed in the set? That's correct, Your Honor. That's correct. Let me tell you the problem I'm having, and that is that while Dr. Lynam's declaration talks about the concerns of different reflectivity, and that suggests that there's something critical and perhaps unobvious about selecting a particular material that meets all of these requirements for relative reflectivity, there's nothing in this fact about that. The specification really doesn't discuss that, doesn't discuss that as a problem that's being solved. It doesn't discuss it at all. That is correct, Your Honor. Specification does not disclose how the law of physics work, because that's pretty straightforward. Starting from Snell equation and Fresnel, that's the law of physics, how reflection from a surface occurs. Actually, a person with ordinary skill in the art would know this. A person with ordinary skill in the art would not... Even PTO... So here we say that ordinary skill in the art would not take Olson and apply to admit a product because ordinary person's skill in the art is trying to solve contrast. PTO said that forget about contrast. Ordinary skill in the art wants to solve glare issue. Then they will be motivated to take Olson and apply to admit a product. To your question, Your Honor, even if that is the case, even if skilled person wanted to reduce the glare, he or she wouldn't do it. Why? Because it's a well-known physical phenomena that when you have two materials with different refractive indices, the reflection from them will be different. I don't think it's necessary for us to disclose that in a specification, because what we're telling somebody who looks at our specification and the claims, what we're telling them is, look, you take the surface, that is pattern, and this is what you need to do. What do you need to do? Put a metal oxide or a material over the pattern surface to reduce the contrast and to have a better light transmission through the medium. So that is the reason, Your Honor, why a person's ordinary skill in the art would not be motivated, whichever way you look at it. Okay, an argument could be made, and I'd like to lay out everything here, that what's the level of ordinary skill in the art? What if this person doesn't even know the very basic physical principles that the light will reflect differently from different surfaces with different refractive indices? Then one needs to look at Olson's column 1, line 64 through 67, column 2, line 1 through 6, specifically states that if you have different layers of materials with different refractive indices, then the reflection from those materials will be different. And anti-reflective property of the coding material will be diminished. If that doesn't deter a person with ordinary skill in the art, I'm not sure what will deter. A person with ordinary skill in the art reading that would say, wow, wait a minute, even if that person doesn't know the laws of physics, that person would say, I'd better not take this material and apply it to the patterned surface. And this is why I say the person with ordinary skill in the art would not be motivated. You're into your rebuttal. Would you like to reserve your time? Yes. Thank you very much. Very good. Let's hear from the office. Ms. Pettigrew? Good morning. Good morning, Your Honor.  Thank you, Your Honor. There are two issues I'd like to address in response to the appellant's argument. The first is what the claim actually means and what's covered by the claim. There was some discussion about this. The claim essentially is a method for making a display panel with reduced contrast by applying a metal oxide layer that happens to result in reduced contrast. There's no specific method in the claim for selecting a metal oxide. It doesn't tell you how to do it, how to choose the refractive index, or how to choose the thickness. And as Judge Prost indicated, there's no indication in Halsey's disclosure as to how that would be done. The claim does claim selecting. It does say, as part of the alleged inventive method, selecting a metal oxide layer to have a refractive index and thickness that possesses certain properties. Does that suggest that that requires a deliberative, affirmative step with some understanding of what properties different materials have so you know, well, I'll select this one. I won't select that one because it has certain properties. I don't think so, Your Honor, because the claim doesn't have any additional steps like you just said, giving any criteria for why you would select one over the other. And the disclosure doesn't explain any criteria for selecting it. I think as long as you select a metal oxide layer that has the right characteristics that would result in reduced contrast, you're within the scope of the claim. It seemed to me that there were a lot of things argued in Dr. Lynam's declaration that I couldn't find in the specification. Did I miss something? No, you're correct, Your Honor. For example, he talks about matching or balancing the light reflectance between the two areas, and nothing like that is in the specification. But the difficulty, and I guess this is part and parcel of the argument, is that glare and contrast are different concepts. And therefore, with the prior art and Olsen teaching glare, one would not have been motivated. You're right that glare and contrast are two different concepts. But the board's finding for why a person of ordinary skill in the art would have been motivated to combine Olsen with the prior art was a desire to reduce glare. It's well established that any problem known in the art can provide the motivation for combining references. And in this case, Olsen specifically talks about the problem of glare on display panels, and Halde himself speaks about the problem of reducing glare. Is glare really a consideration here? I know that there's some discussion of it in the specification, but is this application really directed to that, or is it more to this question of reducing contrast? I think it's directed to both. The specification does talk about reducing glare. Increasing light transmission is essentially the same thing as reducing glare. But you're right that it seems to be more directed to reduce contrast. Is there anything in the claim that suggests that the claim is directed to reducing glare or glare and contrast? There is, after you get past the part about selecting the said metal oxide layer so that contrast is reduced, it then says at the end of step one, and light transmission through said coated panel is increased by said layer of metal oxide, increased light transmission is the same as reduced reflectance. So the board found a motivation to combine Olsen with the prior art display panel, and that that was based on a desire to reduce glare. As was discussed and as Halde has essentially admitted, Olsen teaches the same materials that are in Halde's preferred embodiment. At that point, the examiner had a reasonable basis for concluding that Olsen, when applied to the prior art, would necessarily reduce contrast, and Halde has never rebutted that finding. If there are no further questions, I'll cede the rest of my time. Thank you very much. Mr. Aramoglu, you have a few minutes if you need it. Your Honor, I'd like to start with your question, Judge Venn. Like we said earlier, the application directed to reducing contrast claims. Yes, at the end of the claim, it talks about light transmission, increasing light transmission. However, as I said earlier, if one takes Olsen and applies to admitted prior art blindly without balancing contrast and keeping the contrast in mind, and just to increase the light transmission, then the resulting product would not be satisfactory. Then when you look at the product with no power on, you'll be able to see all these patterns on the surface. That's the big difference, that light transmission affects the product when the power is on. Contrast affects the product, the visual quality of the product, when the power is off. So what the inventor did here is balance those two and tell somebody who wants to do it how to do it. As, Your Honor, you suggested, a specific step we tell public to follow and picking those parameters carefully. I'd like to get back to the argument of no specifics in claim. As I said earlier, it is true. We don't have specific limits in the claim. However, we do teach how to do it in our specification 832, that's the specification number, page 5. We do give the ranges there, thicknesses, 600 to 1400 Armstrong, preferred thickness. And we give different, 800 to 1200, 40 to 600 Armstrong. We give those limits. But is there anything in the specification, on that page or any other page, that provides some guidance as to how one would select the metal oxide layer to meet the terms of this claim as you read it? You mean in terms of what specific material to select? Well, for example, again referring to Dr. Lynam's declaration, he's talking about different reflectivity that occurs if the light bounces off an area that was coated with a conductive member and different where there's no coating. And that produces this contrast problem. Correct. But how would one of ordinary skill in the art understand from this specification how you would go about selecting something that works and something that doesn't work if that is indeed the invention? Your Honor, it's our position that someone would read the specification and should be enabled by this specification to be able to carry out the steps that we mentioned in the claim. But where does it tell us that? It talks about, page 32, it talks about ranges of thickness. Correct. That's all it says. It doesn't say, well, this range is good, this range is not good, this material is good, this material is not good, this reflective index is inappropriate, this reflective index is. There's nothing like that. It's all in Dr. Lynam's declaration. It's correct, Your Honor. The point of the declaration is to describe why contrast is different than glare and why when you try to reduce one, you may increase the other one. As the patent office pointed out that a person with ordinary skill in the art, they pointed out that a person with ordinary skill in the art would be motivated to reduce the glare, which is totally different. This is what Dr. Lynam was describing in his declaration. I don't believe we have to, the inventor had to disclose that to be able to enable somebody to go make the, apply the patent to the product. All right, very good. You've run out of time. Thank you very much. Thank both counsel, the case is submitted.